```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MISSOURI
                          EASTERN DIVISION
```

BEAL BANK NEVADA,              )
                               )
         Plaintiff,            )
                               )
    v.                         )     No. 4:11 CV 561 DDN
                               )
THE BUSINESS BANK OF ST. LOUIS,)
                               )
         Defendant.            )

**MEMORANDUM AND ORDER**

This action is before the court on the motion of plaintiff Beal Bank Nevada to dismiss the counterclaims of defendant The Business Bank of St. Louis. (Doc. 14.) The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 13.) Oral arguments were heard on July 27, 2011. For the reasons set out below, the court grants the motion to dismiss.

**I. BACKGROUND**

On March 25, 2011, plaintiff Beal Bank Nevada (Beal Bank) commenced this action seeking declaratory, monetary, and related relief against defendant The Business Bank of St. Louis (BBSL), for BBSL's failure to remit payments owed to Beal Bank. (Doc. 1.)

Prior to September 6, 2007, BSSL made a loan to Matthew J. and Toni Ratteree in the principal amount of $4.9 million (the "Ratteree Loan"). (Doc. 1 at ¶ 7; Doc. 11 at ¶ 7.) On September 6, 2007, BBSL sold an undivided 82% interest in the Ratteree Loan to Champion Bank. (Doc. 1-1; Doc. 11-1.) The terms of the sale were governed by a Participation Agreement (the "Participation"). (Id.) Under the Participation, all payments due to Champion were to be remitted by BBSL within ten business days from their receipt. (Participation, Doc. 1-1 at ¶ 2.) The Participation also contained the following right-of-first-refusal provision:

> 11. <u>Assignability; Right to Repurchase</u>. Without the prior written consent of Originating Bank, Participating Bank may not assign its obligation to fund disbursements or

> expenditures in connection with the Loan or sell, pledge or otherwise transfer its Participation in the Loan without first offering to Originating Bank the right to repurchase the Participation. Originating Bank shall have no obligation to repurchase the Participation under any circumstances. Participating Bank shall provide to Originating Bank a written agreement from a third party to purchase the Participation, and Originating Bank shall have fifteen (15) days from the receipt of such agreement to notify Participating Bank that Originating Bank will repurchase the Participation on the same terms as set out in such agreement. Participating Bank shall have the right, if Originating Bank does not notify Participating Bank that it is exercising its right to repurchase the Participation within such fifteen (15) day period, to assign or transfer the Participation to such third party.

(Participation, Doc. 1-1 at ¶ 11.)

On April 30, 2010, Champion was closed by the Missouri Division of Finance as a "failed bank." (Doc. 1-2.) The Federal Deposit Insurance Corporation (FDIC) was named receiver pursuant to 12 U.S.C. § 1821. (Id.) The FDIC then began liquidating certain of Champion's assets, including the Participation. (Doc. 1 at ¶ 11; Doc. 11 at ¶¶ 12,13.) On May 20, 2010, BBSL offered to repurchase the Participation from the FDIC for approximately 50% of its then-outstanding balance. (Doc. 1-3) On September 22, 2010, the FDIC rejected BBSL's offer and encouraged BBSL to "make an additional offer that more closely resembles the value of the Participation interest."[1] (Id.) The FDIC undertook to sell the Participation through a bidding process, and made BBSL aware of its intention to do so. (Doc. 1 at ¶ 13; Doc. 11 at ¶ 13.) BBSL objected to the sale of the Participation to the FDIC on at least three occasions: (1) by letter dated September 27, 2010; (2) by letter dated October 15, 2010; and (3) in a phone conversation on October 12, 2010. (Doc. 1-6; Doc. 11 at ¶ 20.)

On December 3, 2010, the FDIC and Beal Bank executed an Assignment and Assumption of Interests and Obligations (the "Assignment"), under which the FDIC transferred all of the rights, title, and interests in the Participation to Beal Bank, with Beal Bank assuming "all obligations

---

[1]This letter was sent to BBSL from SitusServe, L.P., the Special Servicer appointed by the FDIC to service the loan. (Doc. 1-3.)

arising from and after the date [t]hereof." (Doc 1-4; Doc. 1-2 at ¶¶ 1,2.) On January 11, 2011, the FDIC sent a letter to BBSL advising it of the sale of the Participation to Beal Bank. (Doc. 1-5; Doc. 11 at ¶ 16.)

Since then, BBSL has not remitted to Beal Bank any of the payments due under the Participation. (Doc. 1 at ¶ 18; Doc. 11 at ¶ 18.) On January 17, 2011, BBSL wrote a letter to CLMG, Beal Bank's authorized servicer, stating its challenges to the purported Assignment. (Doc. 1-7.) BBSL argued that FDIC repudiation requires payment of damages, and also claimed tortuous interference with state contractual rights for the breach of its right-of-first-refusal. (Id.) In a letter to CLMG dated February 7, 2011, BBSL reasserted these allegations against CLMG and Beal Bank. (Doc. 1-7; Doc 11 at ¶ 21.) BBSL also raised these complaints with the FDIC directly. (Doc. 1-6; Doc. 11 at ¶ 20.) In response, the FDIC advised BBSL on at least two occasions of BBSL's right to file an administrative claim against it, as receiver, for any damages BBSL believed the FDIC had caused. (Id.) BBSL has not filed any such administrative claim. (Doc. 1 at ¶ 22; Doc. 11 at ¶ 22.)

On March 25, 2011, Beal Bank commenced this action by filing a judicial complaint seeking relief. (Doc. 1.) In Count I, Beal Bank seeks a declaratory judgment that the FDIC had the power to sell the Participation to Beal Bank and that the sale was valid.

In Count II, Beal Bank seeks a declaratory judgment that (a) any claims BBSL may have arise from the FDIC's sale of the Participation to Beal Bank and relate to the independent, intervening acts or omissions of the FDIC; (b) any such claim is cognizable, if at all, solely against the FDIC; (c) BBSL is required to pursue any such claims through the exclusive claims process provided for by the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA"), 12 U.S.C. §1821; (d) BBSL has failed to invoke, pursue, and exhaust these processes; (e) absent BBSL's compliance with such processes, BBSL's claim is jurisdictionally barred under 12 U.S.C. § 1821(d)(13)(D); and (f) any such claim cannot be used as a basis to deny payments to Beal Bank under the Participation.

In Count III, Beal Bank seeks a declaratory judgment that BBSL has no claim against Beal Bank related to any alleged violation of the Participation occurring prior to the sale date. In Count IV, Beal Bank seeks an order (a) directing BBSL to perform under the Participation and make payments when due to Beal Bank; and (b) directing BBSL to account to Beal Bank for all amounts due under the Participation. Finally, in Count V, Beal Bank seeks an award of attorneys' fees.

On May 20, 2011, defendant BBSL filed an Answer, Affirmative Defenses, and Counterclaim. (Doc. 11.) In its answer and affirmative defenses, BBSL denies that Beal Bank is entitled to any of the relief sought, claims that Beal Bank is not a valid party to the Participation, and asserts that it has performed all of its obligations under the Participation and has at all times acted in good faith. (Id.)

BBSL alleges that in September 2010, it raised its objections to the FDIC, reiterating that under the terms of the Participation, the FDIC could not transfer the Participation without first offering BBSL the right to repurchase it, pursuant to BBSL's right-of-first-refusal under paragraph 11 of the Participation. (Id. at ¶ 11.) BBSL further alleges that Beal Bank knew or should have known of the existence of its right-of-first-refusal and that both Beal Bank and the FDIC failed to comply with the right-of-first-refusal in executing the transfer. (Id. at ¶¶ 12, 15.)

In Count I of its counterclaims, BBSL alleges that Beal Bank is in breach of contract for the FDIC's failure to comply with the right-of-first-refusal, and that Beal Bank assumed liability for this breach from the FDIC under the terms of the Assignment. (Doc. 11 at ¶¶ 17-19.) BBSL seeks monetary damages in excess of $75,000.00 for damages caused by this breach, as well as incidental damages, prejudgment interest, attorneys' fees, and litigation costs. (Doc. 11 at ¶¶ 10, 11.)

In Count II of its counterclaims, BBSL seeks (a) an order from this court directing Beal Bank to disclose the price paid for the Assignment of the Participation; (b) rescission of the Assignment and an order that it be given the option to repurchase the Participation interest; and (c) that it be awarded its costs, expenses, and attorneys' fees. (Id.)

**II. MOTION TO DISMISS**

On June 10, 2011, plaintiff Beal Bank moved to dismiss defendant BBSL's counterclaims. (Docs. 14, 15.) First, Beal Bank argues that dismissal of BBSL's counterclaims is proper under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, because BBSL failed to exhaust its administrative remedies under FIRREA. (Doc. 15 at ¶¶ 3-7.) Second, Beal Bank argues that dismissal of BBSL's counterclaims is proper under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted, because FIRREA preempts BBSL's contractual right-of-first-refusal and because, under Missouri law, Beal Bank could not have breached a contract to which it was not a party at the time of breach. (Doc. 15 at ¶¶ 7-12.) Finally, Beal Bank argues that dismissal of BBSL's counterclaims is required by Fed. R. Civ. P. 12(b)(7) for failure to join a necessary party because the FDIC is an absent necessary party to the counterclaim. (Doc. 15 at ¶¶ 13-15.)

The court dismisses BBSL's counterclaims for lack of subject matter jurisdiction and for lack of a necessary party. The court does not reach the second issue of whether the counterclaims state a claim upon which relief can be granted.

**III. DISCUSSION**

**A. Lack of Subject Matter Jurisdiction**

Beal Bank argues that dismissal of defendant BBSL's counterclaims is required for lack of subject matter jurisdiction, because BBSL failed to exhaust its administrative remedies under FIRREA. 12 U.S.C. § 1821(d). Beal Bank also argues that the relief sought by BBSL in Count II of its counterclaims is prohibited by 12 U.S.C. § 1821(j). (Doc. 15.) BBSL concedes that it did not pursue any administrative remedies under FIRREA, but contends that it was not required to do so in order to raise its counterclaims. (Doc. 21.)

**1. FIRREA Exhaustion Requirement**

FIRREA's jurisdictional provision, 12 U.S.C. § 1821(d)(13)(D), states:

> Except as otherwise provided in this subsection, no court shall have jurisdiction over —

> (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the [FDIC] has been appointed receiver, including assets which the [FDIC] may acquire from itself as such receiver; or
>
> (ii) any claim relating to any act or omission of such institution or the [FDIC] as receiver.

12 U.S.C. § 1821 (d)(13)(D)(i),(ii).

"Under FIRREA, Congress established a comprehensive claims review process for claims against the assets of failed banks held by the FDIC as receiver." Tri-State Hotels, Inc. v. FDIC, 79 F.3d 707, 712 (8th Cir. 1996); see 12 U.S.C. § 1821(d)(3)-(13). Claimants must initially submit their claims to the FDIC for review through this process. Tri-State Hotels, 79 F.3d at 712. The only exception to this jurisdictional bar is found in 12 U.S.C. § 1821(d)(6)(a), which "provides that courts have jurisdiction over claims that have first been presented to the FDIC under its administrative review process." Id.

Aggrieved parties must fully exhaust the administrative process before the court gains subject matter jurisdiction over the controversy. Bueford v. RTC, 991 F.2d 481, 484 (8th Cir. 1993). "Every court that has considered the issue has found exhaustion of FIRREA's administrative remedies to be a jurisdictional prerequisite to suit in district court." Id.; see, e.g. Henderson v. Bank of New England, 986 F.2d 319, 321 (9th Cir. 1993); Vill. of Oakwood v. State Bank & Trust Co., 539 F.3d 373, 385-86 (6th Cir. 2008).

The exhaustion requirement is equally applicable to actions brought as counterclaims. Am. First Fed., Inc. v. Lake Forest Park, Inc., 198 F.3d 1259, 1263 (11th Cir. 1999); RTC v. Midwest Fed. Sav. Bank of Minot, 36 F.3d 785, 791 (9th Cir. 1993).

The language of § 1821(d)(13)(D) "is quite broad and precludes jurisdiction over 'any claim or action' seeking a determination with respect to the assets of any depository institution." FDIC v. Updike Bros., Inc., 814 F. Supp. 1035, 1039 (D. Wyo. 1993) (quoting 12 U.S.C. § 1821 (d)(13)(D)(i)); accord RTC v. Tri-State Realty Investors of K.C., Inc., 838 F. Supp. 1448, 1451 (D. Kan. 1993). The exhaustion requirement extends to, among other things: (a) claims brought by non-creditors,

Updike Bros, 814 F. Supp. at 1039-40 (rejecting the argument that the exhaustion requirement applies exclusively to creditors' claims, and applying exhaustion requirement to the counterclaims of a mortgagee); Tri-State Hotels, 79 F.3d at 713-14 (debtor of a failed bank); Freeman v. FDIC, 56 F.3d 1394, 1401 (D.C. Cir. 1995) (all FDIC claims, "whether those claims and actions are by debtors, creditors, or others"); (b) to claims related to the pre-receivership actions of failed institutions, Tri-State Hotels, 79 F.3d at 713-14; (c) claims related to the direct actions of the FDIC as receiver, Home Capital Collateral, Inc. v. FDIC, 96 F.3d 760, 763 (5th Cir. 1996) (includes all postreceivership acts or omissions of the FDIC); McCarthy v. FDIC, 348 F.3d 1075, 1079 (9th Cir. 2003)(action against FDIC for breach of a fiduciary duty); and (d) to many other types of claims that are wholly unrelated to repudiation, Rosa v. RTC, 938 F.2d 383, 391-92 (3d Cir. 1991) (ERISA claim); RTC v. Ryan, 801 F.Supp 1545, 1557 (S.D. Miss. 1992) (claim under Federal Tort Claims Act); Palumbo v. Roberti, 839 F. Supp. 80, 85 (D. Mass 1993) (claim based on damage to neighboring real property).

To allow BBSL to circumvent the well established FIRREA process "would encourage the very litigation that FIRREA aimed to avoid" and undercut clear congressionally mandated law. Vill. of Oakwood, 539 F.3d at 386.

    **2. Applicability of Exhaustion Requirement to Claims Brought Against Third Parties**

"[C]ourts have consistently held that the plain language of § 1821(d)(13)(D) bars claims 'relating' to the acts of the receiver or seeking the assets of the failed bank, even when those claims are asserted against the third party purchaser of failed-bank assets from the receiver." Aber-Shukofsky v. JPMorgan Chase & Co., 755 F. Supp. 2d 441, 449 (E.D.N.Y. 2010)(internal citations omitted); see also Vill. of Oakwood, 539 F.3d at 386; diSibio v. Mission Nat'l Bank, 127 Fed. App'x. 950, 951 (9th Cir. 2005); Am. First Fed., Inc., 198 F.3d at 1263 n.3. A claimant "cannot evade FIRREA's mandatory exhaustion requirement simply by asserting claims against . . . third party purchasers of the failed bank's assets." Aber-Shukofsky, 755 F. Supp. 2d at 448. This is because a third party purchaser or successor "stands in the shoes of the [FDIC]

and acquires its protected status under FIRREA." Am. First Fed., Inc., 198 F.3d at 1263 n.3; accord McCarthy v. Beal Bank, SSB, 192 Fed. App'x. 560, 2006 WL 2321208, at *1 (8th Cir. 2006) (per curiam); FDIC v. Newhart, 892 F.2d 47, 50 (8th Cir. 1989). As a result, if the claim is barred as against the FDIC, "it is similarly barred" as against the acquiring institution. Id.; accord McCarthy, 348 F.3d at 1079.

FIRREA's exhaustion requirement is thus equally applicable to claims against Beal Bank, as a third party purchaser and successor in interest of a failed bank's assets, just as if they were brought directly against the FDIC.

### 3. Applicability of Jurisdictional Bar to Rescission

Beal Bank argues that the remedies which BBSL seeks in Count II of its counterclaims are tantamount to injunctive relief and thus expressly prohibited by 12 U.S.C. § 1821(j). BBSL contends that the relief it seeks is of a merely declaratory nature, and that it is not prohibited by FIRREA because it does not seek to restrain the FDIC.

12 U.S.C. § 1821(j) states that "no court may take any action . . . to restrain or affect the exercise of powers or functions of the [FDIC] as a conservator or a receiver." 12 U.S.C. § 1821(j). This absolute bar to the court's powers over the actions of the receiver applies to equitable relief, including rescission, because, as the Eighth Circuit has stated, "rescinding the agreements would act as an impermissible restraint on the ability of the FDIC to exercise its powers as receiver." Tri-State Hotels, Inc., 79 F.3d at 715. This holding is consistent with the holdings of other circuits. See, e.g., Courtney v. Halleran, 485 F.3d 942, 948 (7th Cir. 2007); Sahni v. Am. Diversified Partners, 83 F.3d 1054, 1059 (9th Cir. 1996); Franklin Sav. Ass'n v. Office of Thrift Supervision, 35 F.3d 1466, 1473 (10th Cir. 1994); Ward v. RTC, 996 F.2d 99, 104 (5th Cir. 1993); United Liberty Life Ins. Co. v. Ryan, 985 F.2d 1320, 1328-29 (6th Cir. 1993).

In Count II of its counterclaim BBSL seeks rescission of the Assignment and an order that it be given the option to repurchase the Participation. While BBSL argues that such claims are valid because it has no adequate remedy at law, this argument cannot overcome the explicit statutory prohibition against such restrictive relief. "To hold that the

lack of an adequate alternative remedy renders § 1821(j)'s bar against restraining orders inoperative would . . . be tantamount to rendering the provision entirely ineffective." Ward, 996 F.2d at 104 (internal citation omitted); accord Gross v. Bell Sav. Bank PA SA, 974 F.2d 403, 407-08 (3d Cir. 1992).

Here, as in Ward, BBSL "[had] a method for relief, albeit one [it] did not seek, i.e., monetary damages through the mandatory administrative procedures set forth in FIRREA." Ward, 996 F.2d at 104. Therefore, the counterclaim for rescission is barred.

**4. Preemption of State Contract Law**

BBSL argues that the court has jurisdiction over its breach of contract counterclaim, because FIRREA does not preempt state contract law, but instead provides a procedure through which the FDIC can repudiate contract terms. BBSL argues that, as such, its claim is not subject to the FIRREA process. Beal Bank argues that, even if FIRREA does not preempt state law, BBSL's breach of contract counterclaim is nonetheless subject to the FIRREA exhaustion requirement.

A breach of contract claim arising out of the actions of the FDIC must first be brought through the administrative process required by FIRREA before a court obtains jurisdiction. See FDIC v. Shain, Schaffer & Rafanello, 944 F.2d 129 (3d Cir. 1991) (holding that the court had no jurisdiction to hear a claim for unpaid fees and a retaining lien against a failed bank because "[a]lthough SS&R has a valid retaining lien under New Jersey law, it cannot assert it against the FDIC because federal law has displaced state remedies in this area."); Marquis v. FDIC, 965 F.2d 1148, 1152 (1st Cir. 1992). FIRREA applies even when the FDIC's actions "might violate some other provision of law." Volges v. RTC, 32 F.3d 50, 52 (2d Cir. 1994). Thus, the determination of the court's jurisdiction to hear claims related to the FDIC does not depend on whether the claim is based on state law or federal law. RPM Invs., Inc. v. RTC, 75 F.3d 618, 621 (11th Cir. 1996)(upholding FIRREA's restrictions on court jurisdiction in a breach of contract claim). Thus, while FIRREA does not preempt the entire body of state contract law, it prescribes an exclusive method of remedy for all claims related to the actions of the FDIC. The failure to bring even a potentially valid state law claim in accordance

with the appropriate FIRREA administrative procedures is a bar to the court's jurisdiction. See Centennial Assocs. Ltd. P'ship v. FDIC, 927 F. Supp. 806, 810-11 (D.N.J. 1996).

In Waterview Management Co. v. Federal Deposit Insurance Corporation, 105 F.3d 696 (D.C. Cir. 1997), a case cited by BBSL for the proposition that FIRREA does not preempt a contractual right-of-first-refusal (Doc. 21 at 7), the United States Court of Appeals for the District of Columbia Circuit affirmed the district court's holding that "because of Waterview's failure to exhaust its administrative remedies, it lacked subject matter jurisdiction over Waterview's [other] claims". Waterview Mgmt. Co. v. FDIC, 105 F.3d 696, 699 (D.C. Cir. 1997). This holding demonstrates that the substantive issue of federal preemption should not be decided without the court having subject matter jurisdiction over the claim through exhaustion of the FIRREA administrative process.

Thus, the court does not have jurisdiction over BBSL's breach of contract counterclaim regardless of whether the state contract law is preempted, due to BBSL's failure to exhaust its administrative remedies as required by FIRREA.

**B. Failure to Join the FDIC as a Necessary Party**

Beal Bank also argues that dismissal of BBSL's counterclaims is required under Fed. R. Civ. P. 12(b)(7) for failure to join the FDIC as a necessary party to the counterclaim. BBSL contends that the FDIC is not a necessary party, because the parties do not contest whether the FDIC repudiated the right-of-first-refusal in the Participation, and because the relief sought by BBSL does not include restraining the FDIC's powers or functions as a receiver.

**1. Whether the FDIC Repudiated the Right-of-First-Refusal**

12 U.S.C. § 1821(e)(1) grants the FDIC the authority to repudiate contracts "the performance of which [it] determines to be burdensome" when such repudiation would "promote the orderly administration of the

[insured depository] institution's affairs." 12 U.S.C. § 1821(e)(1)(C). Here the FDIC chose not to take a position as to whether its assignment of the Participation to Beal Bank constituted repudiation under § 1821(e). (Doc. 1-6.)

Courts have found that repudiation occurred where the FDIC, through its acts, disavowed a contractual obligation. In Lawson v. FDIC, 3 F.3d 11 (1st Cir. 1993), the court found that the FDIC "effectively *repudiated* [the] contracts when it declined either to pay . . . promised interest itself or oblige anyone else to do so." Lawson v. FDIC, 3 F.3d at 15. The court reasoned that "[t]he repudiation may have been informal but there was certainly no ambiguity" and pointed out that the Lawsons had received communications from the acquiring bank "describing the transfer" and thus giving clear notice of the repudiation. Id. Notably, in Lawson the FDIC was a party and actively denied that repudiation had taken place. However, the court held that the FDIC's denial "[did] not alter the substance of what it ha[d] done, namely, to refuse to maintain the promised interest rate," noting that the FDIC has good reason to find acknowledgment of repudiation to be "unattractive." Id. at 15 n.7; see also FDIC v. Widefield Homes, Inc., 916 F. Supp. 1074, 1077 (D. Colo. 1996), (the receiver "effectively repudiated the contract when it declined to oblige [the purchasing institution] to pay the previously promised interest rate").

Similarly, in this case, the FDIC sold the Participation to Beal Bank without honoring the right-of-first-refusal provision, and notified BBSL of the sale by letter on January 11, 2011. (Doc. 1-5.) Any agreement in the positions of Beal Bank and BBSL and the FDIC's apparent equivocal position are not a sufficient basis for the court to decide whether repudiation occurred, without the FDIC present to represent its interests and to participate in an ultimate grant of relief, if any.

In a very similar case in this court, Bank of Commerce v. Business Bank of St. Louis, No. 4:11 CV 428 JCH, the court dismissed defendant BBSL's counterclaims for failure to join the FDIC as a necessary party. The court held that the FDIC's presence in the case was necessary in order to accord complete relief and "determine, among other things, whether the FDIC effectively repudiated the Participation Agreement under

FIRREA." Bank of Commerce v. Business Bank of St. Louis, No. 4:11 CV 428 JCH (Doc. 21 therein).[2]

Therefore, whether the FDIC repudiated BBSL's right-of-first-refusal remains unresolved at this time.

**2. Effect of This Judicial Action on the FDIC**

Beal Bank argues that because BBSL seeks to "unwind" the FDIC's Assignment of the Participation, the FDIC's interests are central to BBSL's counterclaims, making them a necessary party. BBSL contends that its counterclaims do not implicate the FDIC's powers or functions, and that all possible liability or interest of the FDIC has been passed on to Beal Bank by virtue of the Assignment.

BBSL's arguments are unavailing. Claims made against a third party that allege liability arising out of a transaction with the FDIC are "directly related to acts or omissions of the FDIC as the receiver." Vill. of Oakwood, 539 F.3d at 386. An award in favor of BBSL of damages or rescission of the sale would expose the FDIC to "potential liability to the buyers" and "curtail the ability of the FDIC to fulfill its statutory mandate because rescission would have a chilling effect on the FDIC's future sales." Sahni, 83 F.3d at 1057.

Moreover, rescission of the Assignment would return the Participation directly to the FDIC. In sum, "[t]he FDIC-Receiver is a necessary party because [BBSL's] injuries depend on the independent intervening sale by the FDIC-Receiver." Am. Nat. Ins. Co. v. JPMorgan Chase & Co., 705 F. Supp. 2d 17, 21 (D.D.C. 2010) (FDIC was a necessary party to a tortuous interference with contract claim brought against an acquiring bank).

BBSL argued at the hearing that the court could order Beal Bank to offer the option to repurchase directly to BBSL without involving the

---

[2] This companion case also arose out of the FDIC's sale of a Participation Agreement between BBSL and Champion Bank, also without honoring BBSL's contractual right-of-first-refusal. The terms of that Participation Agreement and right-of-first-refusal appear identical to the terms in this case.

FDIC. However, this is not what a rescission would likely accomplish,[3] and is not the relief sought in the counterclaim.[4] Furthermore, any court interference with the Assignment could expose the FDIC to potential liability to Beal Bank. Sahni, 83 F.3d at 1057. When acting as receiver, the FDIC "stands in the shoes" of the failed institution, FDIC v. Miller, 781 F. Supp. 1271, 1274 n.1 (N.D. Ill. 1991); cf. FDIC v. McSweeney, 976 F.3d 532, 538 (9th Cir. 1992), and becomes a necessary party by virtue of its instrumental role in the sale of the failed institution's asset.

## IV. ORDER

For the reasons set forth above,

**IT IS HEREBY ORDERED** that the motion of plaintiff Beal Bank Nevada to dismiss the counterclaims of defendant Beal Bank of St. Louis (Doc. 14) is sustained.

　　　　　　　　　　　　　　　　/S/   David D. Noce　　　　　

　　　　　　　　　　　　　　**UNITED STATES MAGISTRATE JUDGE**

Signed on August 8, 2011.

---

[3] A rescission in this matter would likely require the transfer of the Participation back to the FDIC, with the FDIC refunding the full purchase price of the Participation to Beal Bank. Black's Law Dictionary, at 1308 (7th ed. West Group)(rescission restores the parties to their pre-contractual positions).

[4] In Count II of its counterclaim, BBSL seeks an order from the court rescinding the Assignment and ordering that BBSL be given the option of repurchasing the Participation. (Doc. 11 at 11-12.) If such a rescission were ordered by the court, a subsequent order directing that BBSL be allowed to repurchase the Participation would have to be directed to the FDIC, who would then be the holder of the Participation.