```
                  UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF MISSOURI
                        EASTERN DIVISION


BEAL BANK USA,                    )
                                  )
            Plaintiff,            )
                                  )
      v.                          )    No. 4:11 CV 561 DDN
                                  )
THE BUSINESS BANK OF ST. LOUIS,   )
                                  )
            Defendant.            )
```

**MEMORANDUM AND ORDER**

This action is before the court on the motion of plaintiff Beal Bank USA[1] (Beal Bank) for summary judgment against defendant The Business Bank of St. Louis (BBSL). (Doc. 29.) Oral arguments were heard on February 22, 2012. For the reasons set forth below, the court grants partial summary judgment to Beal Bank and sets the action for a non-jury trial.

**I. BACKGROUND**

Beal Bank's claims

Beal Bank commenced this judicial action against BBSL, generally invoking for all of its claims the court's diversity of citizenship subject matter jurisdiction granted by 28 U.S.C. § 1332.[2] Beal Bank alleges that the Federal Deposit Insurance Corporation (FDIC), as the receiver of failed bank Champion Bank, transferred to Beal Bank an interest in certain loan repayment proceeds, which were an asset of Champion Bank, (Champion Bank participation) and that BBSL, the contractual promisor, has not paid to Beal Bank all the proceeds due it under a Participation Agreement to which Champion Bank had been a party.

---

[1] After this action was commenced, plaintiff changed its name from "Beal Bank Nevada" to "Beal Bank USA". (Doc. 28.) The case shall continue with plaintiff thus renamed.

[2] Beal Bank alleges for itself corporate citizenship in Nevada, that BBSL is a Missouri banking corporation, and that the amount in controversy exceeds $75,000. (Doc. 1 at ¶¶ 2-4.) These jurisdictional facts are not disputed. The court has subject matter jurisdiction over this action under 28 U.S.C. § 1332.

In Count I, Beal Bank seeks a declaratory judgment that the FDIC had the authority to sell or assign to it, and that it acquired, the Champion Bank participation and that this transaction was valid.

In Count II, Beal Bank seeks a declaratory judgment that (a) any claim asserted by BBSL arises from the FDIC assignment of the Champion Bank participation to Beal Bank and relates to the independent, intervening acts or omissions of the FDIC; (b) any such claim by BBSL is cognizable, if at all, solely against the FDIC; (c) BBSL is required to pursue any such claims through the exclusive claims process provided by the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub. L. No. 101-73, 103 Stat. 183 (1989) (FIRREA);[3] (d) BBSL has failed to invoke, pursue, and exhaust these processes; (e) absent BBSL's compliance with the procedures required by FIRREA, BBSL's claims are jurisdictionally barred by 12 U.S.C. § 1821(d)(13)(D); and (f) any such claim cannot be used as a basis to deny payments to Beal Bank under the Participation Agreement.

In Count III, Beal Bank seeks a declaratory judgment that BBSL has no claim against it related to any alleged violation of the Participation Agreement that occurred before the transaction date.

In Count IV, Beal Bank seeks an order (a) directing BBSL to perform its duties under the Participation Agreement and to make payments to Beal Bank when due;[4] and (b) directing BBSL to account to Beal Bank for all amounts due under the Participation Agreement.

Finally, in Count V, Beal Bank seeks an award of attorneys' fees and costs.

## BBSL's answer and counterclaims

In its answer and affirmative defenses, BBSL denies that Beal Bank is entitled to any of the relief it seeks, claims that Beal Bank is not

---

[3] FIRREA is "codified in scattered sections of Title 12" of the United States Code. Loumiet v. Office of Comptroller of Currency, 650 F.3d 796, 798 (D.C. Cir. 2011).

[4] As stated below, BBSL asserts it has remitted to Beal Bank substantial monies on account of the Participation Agreement.

a valid party to the Participation Agreement, and asserts that BBSL has performed all of its obligations under the Participation Agreement and has at all times acted in good faith.

In its Count I counterclaim, BBSL alleged that Beal Bank, under the terms of the FDIC assignment to it of the Champion Bank participation, assumed liability for the FDIC's failure to comply with the right-of-first-refusal provision in the Participation Agreement. BBSL sought monetary damages in excess of $75,000.00 for damages caused by this breach, as well as incidental damages, prejudgment interest, attorneys' fees, and litigation costs.

In its Count II counterclaim, BBSL sought (a) an order from this court directing Beal Bank to disclose the price it paid for the assignment of the Champion Bank participation; (b) rescission of the FDIC assignment and an order that BBSL be given the option to repurchase the Champion Bank participation; and (c) an award of costs, expenses, and attorneys' fees.

On August 8, 2011, the court sustained Beal Bank's motion to dismiss BBSL's counterclaims for lack of subject matter jurisdiction and because BBSL failed to join the FDIC as a necessary party to its counterclaims. The court held that BBSL failed to exhaust its administrative remedies against the FDIC under FIRREA and thus FIRREA's jurisdictional bar precluded subject matter jurisdiction. (Doc. 27); <u>Beal Bank Nevada v. The Business Bank of St. Louis</u>, No. 4:11 CV 561 DDN, 2011 WL 3444241 (E.D. Mo. Aug. 8, 2011).

The court also held that, without having the FDIC present in this case, there was not then in the record a sufficient basis for deciding whether the FDIC repudiated BBSL's right of first refusal. This ruling was consistent with a similar decision by a judge of this court in <u>Bank of Commerce v. Business Bank of St. Louis</u>, No. 4:11 CV 428 JCH.

Now before the court is the motion of Beal Bank for summary judgment. (Doc. 29.)

## II. MOTION FOR SUMMARY JUDGMENT

Summary judgment must be granted when the pleadings and proffer of evidence demonstrate that no genuine issue of material fact exists and

the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Ashanti v. City of Golden Valley, 666 F.3d 1148, 1150 (8th Cir. 2012). The court must view the evidence in the light most favorable to the nonmoving party and accord it the benefit of all reasonable inferences. Ashanti, 666 F.3d at 1150. A fact is "material" if it could affect the ultimate disposition of the case, and a factual dispute is "genuine" if there is substantial evidence to support a reasonable jury verdict in favor of the non-moving party. Die-Cutting Diversified, Inc. v. United Nat'l Ins. Co., 353 F. Supp. 2d 1053, 1054-55 (E.D. Mo. 2004).

Initially, the moving party must demonstrate the absence of an issue for trial. Celotex, 477 U.S. at 323. Once a motion is properly made and supported, the nonmoving party may not rest upon the allegations in its pleadings but must instead proffer admissible evidence that demonstrates a genuine issue of material fact. Fed. R. Civ. P. 56(e); Crawford v. Van Buren Cnty., Ark., ___ F.3d ___, 2012 WL 1813423, at *3 (8th Cir. 2012). Even if all of the relief sought by the movant is not granted, the court may make findings of undisputed facts that will guide the court in the further disposition of the case. See Fed. R. Civ. P. 56(g).

## The relevant undisputed facts

The following facts are undisputed although the parties dispute their legal effect:

1. On or before September 6, 2007, The Business Bank of St. Louis (BBSL) loaned to Matthew J. and Toni Ratteree $4.9 million. Under the loan agreement, the Ratterees were obligated to make periodic payments to BBSL.

2. Effective September 6, 2007, BBSL entered into a Participation Agreement with Champion Bank,[5] whereby BBSL sold to Champion Bank an

---

[5]The preamble paragraph of the Participation Agreement describes BBSL as the "Originating Bank" and Champion Bank as the "Participating Bank." Nowhere else in the Participation Agreement are BBSL and Champion Bank referred to other than as "Originating Bank" and "Participating Bank," respectively. (Doc. 1-1.)

undivided 82% interest (Champion Bank participation) in the Ratteree loan.

    3.    The Participation Agreement provides in relevant part as follows:

> **2. <u>Payments.</u>** Any payments made on the Loan, and any proceeds of any collateral for the Loan, shall be divided between Originating Bank and Participating Bank as set out in Exhibit A. Originating Bank shall receive all payments of principal, interest, default penalties, collateral proceeds and other amounts payable on the Loan. All payments shall be first applied to advances of principal, then to accrued interest, and then to repayment of advances made to pay fees and expenses. Originating Bank shall, within ten (10) business days after receipt of each payment, report and remit, by wire transfer or as otherwise directed by Participating Bank, the portion of such payment to which Participating Bank is entitled. If there are not sufficient funds to repay Participating Bank's interest in full, Participating Bank shall have no claim against Originating Bank for any remaining balance.
>
> * * *
>
> **11. <u>Assignability; Right to Repurchase.</u>** Without the prior written consent of Originating Bank, Participating Bank may not assign its obligation to fund disbursements or expenditures in connection with the Loan or sell, pledge or otherwise transfer its Participation in the Loan without first offering to Originating Bank the right to repurchase the Participation. Originating Bank shall have no obligation to repurchase the Participation under any circumstances. Participating Bank shall provide to Originating Bank a written agreement from a third party to purchase the Participation, and Originating Bank shall have fifteen (15) days from the receipt of such agreement to notify Participating Bank that Originating Bank will repurchase the Participation on the same terms set out in such agreement. Participating Bank shall have the right, if Originating Bank does not notify Participating Bank that it is exercising its right to repurchase the Participation within such fifteen (15) day period, to assign or transfer the Participation to such third party.
>
> * * *
>
> **14. <u>Attorney's Fees and Costs.</u>** Each party to this Agreement shall pay its own attorneys' fees incurred in connection with the negotiation and execution of this Agreement. If any lawsuit or proceeding is brought by either party to enforce the terms of this Agreement, the unsuccessful party agrees to pay the prevailing party's court costs and reasonable attorneys' fees incurred in bringing or defending such action.

* * *

> **17. Governing Law.** This Participation Agreement is executed under and shall be governed and construed in accordance with the laws of the State of Missouri, and the parties hereto submit to jurisdiction of the courts of Missouri.

(Doc. 1-1 at 1-5.)

4. Exhibit A to the Participation Agreement states, "Payments on the Loan (including accrued interest and contributions to fees and expenses) shall be distributed pro rata between Originating Bank and Participating Bank." (Doc. 1-1 at 6.)

5. On April 30, 2010, the Missouri Division of Finance closed Champion Bank and appointed the Federal Deposit Insurance Corporation (FDIC) as Receiver for Champion Bank's assets, which included the Champion Bank participation in the Ratteree loan repayment proceeds.

6. On May 20, 2010, BBSL offered to repurchase the Champion Bank Champion Bank participation from the FDIC for approximately 50% of its then-outstanding balance.

7. By a letter dated September 22, 2010, the FDIC rejected BBSL's offer, but encouraged BBSL to "make an additional offer that more closely resemble[d] the value of the Participation Interest." (Doc. 1-3.)

8. Thereafter, the FDIC undertook to sell the Champion Bank participation through a bidding process and made BBSL aware of this. BBSL objected to the FDIC regarding the sale of the Champion Bank participation on at least three occasions: (1) by letter dated September 27, 2010; (2) by letter dated October 15, 2010; and (3) in a phone conversation on October 12, 2010.

9. On December 3, 2010, the FDIC and Beal Bank executed a document captioned, "Assignment and Assumption of Interests and Obligations" (the Assignment document), under which the FDIC transferred all of the rights, title, and interests in the Champion Bank participation to Beal Bank, with Beal Bank assuming "all obligations arising from and after the date [t]hereof." The relevant language of the Assignment document states:

> THIS ASSIGNMENT AND ASSUMPTION OF INTERESTS AND OBLIGATIONS ("Assignment") is made and entered into as of the

3rd day of December, 2010, by and between the Federal Deposit Insurance Corporation , as Receiver for Champion Bank, Creve Coeur, Missouri, ("Assignor"), and BEAL BANK NEVADA, a Nevada thrift organized and existing under the law of Nevada ("Assignee").

    Whereas, Assignor and Assignee have entered into that certain Loan Sale Agreement dated as of December 3, 2010 (the "LSA"), pursuant to which Assignor has agreed to sell, assign, transfer and convey to Assignee all the assets identified on Exhibit A attached to this Agreement (the "Assets").

* * *

    Whereas, Assignee has agreed to accept and assume all of Assignor's duties, obligations and liabilities under the Agreements to Pay, Collateral Documents, Real Estate Interests and Miscellaneous Agreements related to the Assets (the "Obligations").

* * *

    NOW THEREFOR, in consideration of the foregoing and the sum of ten dollars ($10.00), and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Assignor and Assignee hereby agree as follows:

    1.   <u>Assignor's Assignment.</u>  Assignor hereby transfers . . . to Assignee all of the Assignor's right, title and interest in the Agreements to Pay, the Collateral Documents, the Real Estate Interests and the Miscellaneous Agreements.

    2.   <u>Assignee's Acceptance.</u> Assignee does hereby accept such assignment from Assignor and assumes all Obligations arising from and after the date hereof. The Obligations assumed include, without limitation, any and all obligations to (i) make payments relating to Agreements to Pay serviced by Assignor; (ii) make Advances with respect to Agreements to Pay serviced by Assignor; (iii) reimburse third party servicers for Advances on Agreements to Pay, and (iv) make incremental disbursements of loan proceeds, such as in the case of a revolving credit loan or a construction loan.

* * *

    7.   <u>Controlling Law.</u> Federal law of the United States shall control this Agreement. To the extent that federal law does not supply a rule of decision, this Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of New York. Nothing in this Agreement will require any unlawful action or inaction by either party.

(Doc. 1-4 at 1-3.)

10. After December 3, 2010, BBSL received payments from the borrower on the Ratteree Loan.[6]

11. On January 11, 2011, the FDIC sent a letter to BBSL advising it of the transfer of the Champion Bank participation to Beal Bank.

12. After BBSL received the FDIC letter giving it notice of the transfer, Beal Bank instructed BBSL to send all payments due it under the Participation Agreement to CLMG Corp., Beal Bank's servicer.

13. By letter dated January 17, 2011, BBSL advised CLMG of its challenges to the purported assignment of the Champion Bank participation. BBSL argued that the FDIC's repudiation of its right of first refusal requires the payment of damages for tortious interference with BBSL's state law contractual rights in the Participation Agreement.

14. BBSL also made these complaints to the FDIC directly. In response, the FDIC advised BBSL on at least two occasions that BBSL had the right to file an administrative claim against it as receiver for any damages that BBSL believed the FDIC had caused it. BBSL has not filed any such administrative claim or joined the FDIC as a party to this action.

## DISCUSSION

Plaintiff Beal Bank invokes the court's diversity of citizenship subject matter jurisdiction, granted by 28 U.S.C. § 1332. In a diversity action such as this, the court must apply the choice of law rules that would be applied by the state courts of Missouri, the forum state. 28 U.S.C. § 1652; e.g., John T. Jones Const. Co. v. Hoot Gen. Const. Co., Inc., 613 F.3d 778, 782 (8th Cir. 2010). Beal Bank's claims against BBSL for failure to pay to it proceeds from the Champion Bank participation in the Participation Agreement sound in breach of contract. Under the law of Missouri, contracting parties are bound by their selection of the applicable substantive law for resolving a future disputes. State ex

---

[6] Beal Bank and BBSL dispute whether BBSL has remitted to Beal Bank all of the Champion Bank participation proceeds it received. It is undisputed that BBSL has remitted at least some of these proceeds to Beal Bank.

rel. McKeage v. Cordonnier, 357 S.W.3d 597, 600 (Mo. banc 2012). The court thus applies Missouri law as the rules of decision.

In its motion for summary judgment, Beal Bank seeks the following relief:

(a)   a declaration that the FDIC's December 3, 2010 assignment of the Champion Bank participation to Beal Bank was valid;
(b)   a declaration that Beal Bank is the "Participating Bank" in the Participation Agreement;
(c)   judgment against BBSL for (i) the amount of any unpaid participation monies to which Beal Bank is entitled under the Participation Agreement, and (ii) prejudgment interest;
(d)   an order to BBSL that it make all monthly payments to Beal Bank that are required by the Participation Agreement in the future; and
(e)   reasonable attorneys' fees, costs, and expenses.

### (a): Validity of the FDIC Assignment

In dismissing BBSL's counterclaims earlier in this suit, the court determined that FIRREA barred the court from considering BBSL's allegations that the FDIC assignment of the Champion Bank participation to Beal Bank was in violation of BBSL's contractual right of first refusal, because BBSL had not pursued its statutory administrative remedies before the FDIC. This failure deprived the court of subject matter jurisdiction over BBSL's counterclaims.[7]  Beal Bank, 2011 WL 3444241, at *4-5; e.g., Benson v. JPMorgan Chase Bank, N.A., 673 F.3d 1207, 1209 (9th Cir. 2012) ("Litigants cannot avoid FIRREA's administrative requirements through strategic pleading."); Am. Nat'l Ins.

---

[7]See 12 U.S.C. § 1821(d)(13)(D)(ii), which provides:

Except as otherwise provided in this subsection, no court shall have jurisdiction over--

* * *

(ii) any claim relating to any act or omission of such institution or the [FDIC] as receiver.

12 U.S.C. § 1821(d)(13)(D)(ii).

Co. v. FDIC, 642 F.3d 1137, 1144 (D.C. Cir. 2011) (explaining that a claim which is "functionally a claim against the FDIC-as-receiver" is subject to FIRREA's administrative exhaustion requirement (discussing Village of Oakwood v. State Bank & Trust Co., 539 F.3d 373, 386 (6th Cir. 2008)); Stonearch Fund IV, LLC v. Beal Bank USA, Civ. Nos. 11-3187 (PAM/FLN), 11-3320 (PAM/FLN), 2012 WL 1648904, at *3 (D. Minn. May 2, 2012) (holding that claims in "a nearly identical case" were barred by § 1821(d)(13)(D)(ii)). The court also determined that the absence of the FDIC as a party in the action deprived the court of a necessary party because BBSL's counterclaims would have required the court to evaluate the FDIC's actions and if successful, would have exposed the FDIC to potential liability. Beal Bank, 2011 WL 3444241, at *7-8; e.g., Bank of Commerce, No. 4:11 CV 428 JCH (Doc. 21) (holding that the FDIC's presence in the case was necessary in order to accord complete relief and to "determine, among other things, whether the FDIC effectively repudiated the Participation Agreement under FIRREA").

In its memorandum opposing summary judgment, BBSL does not contest that Beal Bank is entitled to payments from the Champion interest in accordance with the terms of the Participation Agreement. On this basis, BBSL argues that the validity of the FDIC assignment is not presently at issue and that Beal Bank's claims are now moot. (Doc. 33.)

The court agrees that the validity of the FDIC assignment is no longer contested and thus not properly before the court for adjudication. BBSL concedes that Beal Bank is the "Participating Bank" under the Participation Agreement and is thus entitled to payments owed under the Participation Agreement; BBSL has made at least some of these payments to Beal Bank. (Docs. 33, 48.) Thus, no controversy now exists between the parties concerning the FDIC assignment or that Beal Bank is the "Participating Bank" under the Participation Agreement. E.g., Bank of Commerce, 2011 WL 463529, at *4 (explaining under similar circumstances that "the question of whether the FDIC rightfully and legally transferred the Participation Agreement without first allowing [BBSL] its right of first refusal [was] not before the Court" because BBSL had "implicitly conceded the validity of the transfer"). Issuance of a declaratory judgment is not a proper remedy under these circumstances. See Golden

v. Zwickler, 394 U.S. 103, 108 (1969) (holding that there must be a real and immediate controversy between the parties for a declaratory judgment to be proper).

Moreover, a declaration by the court regarding the FDIC assignment of the Champion Bank participation would require speculation by the court as to what statutory authority the FDIC invoked in assigning the Champion Bank participation to Beal Bank. Compare, e.g., § 1821(e)(1) (authorizing the FDIC to repudiate contracts "the performance of which [the FDIC] determines to be burdensome" when repudiation would "promote the orderly administration of the [insured depository] institution's affairs") with § 1821(d)(2)(G)(i)(II) (authorizing the FDIC to "transfer any asset or liability of the [insured depository] institution in default . . . without any approval, assignment, or consent"). A determination by the court in this regard could also expose the FDIC to potential liability, a fact relied upon by the court in dismissing BBSL's counterclaims. Beal Bank, 2011 WL 3444241, at *8; cf. Sahni v. Am. Diversified Partners, 83 F.3d 1054, 1057 (9th Cir. 1996) (explaining that rescission would not be an appropriate remedy because it could expose the FDIC to liability).

Nor is a declaratory judgment concerning the FDIC assignment required before the court can award damages to Beal Bank for payments owed under the Participation Agreement. See, e.g., Bank of Commerce, No. 4:11 CV 428 JCH, 2011 WL 4635929, at *4 (E.D. Mo. Oct. 6, 2011) (granting summary judgment that the Participation Agreement was valid and enforceable where a declaration regarding the validity of the Assignment was not sought); Stonearch, 2012 WL 1648904, at *6 (explaining that relief for a breach of the Participation Agreement was available because such relief "[did] not involve allegations regarding the FDIC"). As discussed below, the undisputed facts show that BBSL may have breached the Participation Agreement; a declaratory judgment regarding the FDIC assignment is not necessary to resolve the actual conflict between the parties, namely, whether BBSL improperly refused to remit payments on the Champion Bank participation to Beal Bank. See Dominium Mgmt. Servs., Inc. v. Nationwide Hous. Group, 195 F.3d 358, 367 (8th Cir. 1999) (stating that the court should not issue a declaratory judgment where it

"would serve no useful purpose and would engender more uncertainty and controversy than it would resolve").

Therefore, to the extent issues concerning the FDIC assignment of the Champion Bank participation to Beal Bank are not moot, the court declines to issue a declaratory judgment as to these issues. See generally Gulf Underwriters Ins. Co. v. Burris, 674 F.3d 999, 1004 (8th Cir. 2012) (explaining that "[r]elief under 28 U.S.C. § 2201, the Federal Declaratory Judgment Act, is discretionary").

### (b), (c), and (d): Payment of Proceeds and Prejudgment Interest

Beal Bank also seeks a declaratory judgment that it is the "Participating Bank" under the Participation Agreement, as well as payment of all past, unpaid payments; prejudgment interest on those payments; and an order directing BBSL to make all future payments owed under the Participation Agreement.

BBSL argues that these issues are moot because in an attempt to resolve this litigation, it has paid all that is owed to Beal Bank under the Participation Agreement. (Docs. 33, 48.) The court agrees with BBSL in some respects and disagrees in others.

In its response to Beal Bank's motion for summary judgment, BBSL asserted that it has complied with the terms of the Participation Agreement by paying all amounts payable to Beal Bank as though the Participation Agreement was valid. (Doc. 33 at 1-2.) However, BBSL then argued that, in the event the court holds this dispute is not moot, Beal Bank is not the "Participating Bank" under the Participation Agreement. (Doc. 33 at 3-5.)

As discussed above, the court concludes that BBSL has conceded that Beal Bank is the "Participating Bank" under the Participation Agreement. E.g., Bank of Commerce, 2011 WL 4635929, at *4 (BBSL conceded that Bank of Commerce was the "Participating Bank" under another Participation Agreement assigned to Bank of Commerce by the FDIC-receiver). Moreover, any challenges to Beal Bank being the "Participating Bank" under the Participation Agreement are effectually challenges to the FDIC assignment, an issue not properly before the court.

However, the factual issue of complete payment *vel non* of outstanding amounts owed under the Participation Agreement is before the court.[8] Beal Bank's entitlement to any unpaid amount by BBSL from the Ratteree loan proceeds is subject to a claim under Missouri law for breach of the Participation Agreement brought by Beal Bank as a third-party creditor beneficiary of this agreement.

> A third-party beneficiary is one who is not in privy to a contract but *may* nonetheless pursue a cause of action for breach of contract. The rights of a third-party beneficiary depend on the terms of the contract itself. The beneficiary need not be named in the contract, but the terms of the agreement must clearly and directly express an intent to benefit an identifiable person or class. A party claiming rights as a third-party beneficiary has the burden of showing that provisions in the contract were intended for his direct benefit. The contract rights are only enforceable if the promisor assumed a direct obligation to the third-party beneficiary.
>
> * * *
>
> A creditor beneficiary is one upon whom the promisee intends to confer the benefit of the performance of the promisee's contract with the promisor and thereby discharge an obligation or duty the promisee owes the beneficiary.

Kansas City Hispanic Ass'n Contractors Enter., Inc. v. City of Kansas City, 279 S.W.3d 551, 555 (Mo. App. W.D. 2009) (internal citations omitted).

The factual record is clear that, in the absence of a challenge to the legal validity of the assignment transaction, BBSL obligated itself in the Participation Agreement to pay the Champion Bank participation in the Ratteree loan payments to whomever that interest was transferred under the Participation Agreement. There is no dispute and the court concludes that Beal Bank is the identifiable third-party creditor beneficiary of that interest by reason of the assignment to it by the

---

[8] The court is not jurisdictionally barred, either by FIRREA or Article III of the Constitution, from deciding whether and to what extent BBSL is liable to Beal Bank for unpaid proceeds of the Champion Bank participation because Beal Bank denies that BBSL had paid all that is owed, including interest, from the Champion Bank participation in the Ratteree loan proceeds. See n. 6.

- 13 -

FDIC, as BBSL cannot challenge the FDIC assignment in this action at this time. Thus, Beal Bank may be entitled to judgment for unpaid proceeds of the Champion Bank participation.[9]

As previously noted, the parties dispute whether BBSL has paid to Beal Bank all the monies that it would be entitled to under the Participation Agreement. Therefore, the factual issue of full payment remains to be tried. Affected by this factual issue are Beal Bank's claims to prejudgment interest and other relief.

Therefore, Beal Bank is entitled to (b) a declaratory judgment that it is the "Participating Bank" under the Participation Agreement, but is not entitled to summary judgment concerning (c) future payments, or (d) prejudgment interest.

### (e): Attorneys' fees, costs, and interest

Beal Bank argues that it is entitled to reasonable attorneys' fees, costs, and post-judgment interest under the Participation Agreement. And, indeed, § 14 of the Participation Agreement, stated above, provides for such relief to the party to that Agreement who prevails in a dispute brought under the Agreement.

BBSL argues that because the court cannot declare that the FDIC assignment of the Champion Bank participation to Beal Bank is valid, BBSL cannot be liable for the relief sought under the Participation Agreement. But, as discussed above, by electing not to pursue its statutory administrative remedies against the FDIC and by not joining the FDIC as a party in this action, BBSL has waived its right to challenge the validity of the FDIC assignment. Thus, BBSL's arguments do not undermine Beal Bank's claim to attorneys' fees under the Participation Agreement.

---

[9]If BBSL is wronged by the FDIC assignment of the Champion Bank participation to Beal Bank, as previously stated in this litigation, BBSL may claim damages from the FDIC in an administrative action, 12 U.S.C. § 1821(d)(3)-(13), though whether BBSL could recover any such damages against the FDIC is unclear, e.g., 12 U.S.C. § 1821(e)(3)(B)(ii) (precluding damages for lost profits). Regardless, such a claim has not been filed and is not before the court.

Alternatively, BBSL argues that Beal Bank's claim arises under the Assignment, not the Participation Agreement. Putting aside the issue of the validity of the Assignment, Beal Bank's entitlement to proceeds from the Ratteree loan payments, pursuant to the Champion Bank participation, arises in equal parts from not only the Assignment document but also from § 14 of the Participation Agreement. The relevant portion of § 14 of the Participation Agreement states:

> If any lawsuit or proceeding is brought by either party to enforce the terms of this Agreement, the unsuccessful party agrees to pay the prevailing party's court costs and reasonable attorneys' fees incurred in bringing or defending such action.

(Doc. 1-1 at 4.)

On the claim made by Beal Bank against BBSL for payment of loan proceeds under the Participation Agreement, Beal Bank is the "prevailing party" and BBSL is the "unsuccessful party" under § 14, because BBSL has impliedly agreed that Beal Bank is entitled to the proceeds from the Champion Bank participation in the Ratteree loan payments. Bank of Commerce, 2011 WL 4635929, at *4 (also rejecting BBSL's argument and reaching the same conclusion). Beal Bank has also prevailed on its motion to dismiss BBSL's counterclaims. Therefore, Beal Bank is entitled to its court costs and "reasonable attorneys' fees" under § 14.

In this diversity action, the court looks to Missouri law regarding the amount of reasonable attorneys' fees. Weitz Co. v. MH Washington, 631 F.3d 510, 528 (8th Cir. 2011). Beal Bank's entitlement to attorneys' fees is based upon the contractual Participation Agreement. "Where the claim to attorneys' fees is based upon a contract, the court must adhere to the terms of the contract and may not go beyond it." Trimble v. Pracna, 167 S.W.3d 706, 714 (Mo. banc 2005). Missouri law also cloaks the court with expertise in "fashioning an award of attorneys' fees." Western Blue Print Co., LLC v. Roberts, ___ S.W.3d ___, 2012 WL 1339380, at *14 (Mo. banc 2012). In the application of its expertise, the court considers:

> (1) the time, nature, character and amount of services rendered; (2) the nature and the importance of the litigation; (3) the degree of responsibility imposed on or incurred by the attorney; (4) the amount of property or money involved; (5) the degree of professional ability, skill and experience

>     that was called for and used; and (6) the result that was
>     achieved. Recovery is limited to the reasonable value of
>     services rendered, not to exceed the contracted fee, and
>     payable only upon the occurrence of the contingency. In
>     addition, a client should not have to pay for duplicative
>     service, and, as in all cases relating to quantum meruit, the
>     services must have enriched the client in the sense of
>     benefits conferred.

Turpin v. Anderson, 957 S.W.2d 421, 427 (Mo. App. W.D. 1997) (internal citations omitted).

Stated another way, in determining reasonable attorneys' fees for a prevailing party, "[t]he lodestar, the starting point in determining attorneys' fees, is determined by multiplying the number of hours reasonably expended by the reasonable hourly rate." Alhalabi v. Mo. Dep't of Natural Res., 300 S.W.3d 518, 530 n.6 (Mo. App. E.D. 2009) (internal citation omitted); accord McClelland v. Life Ins. Co. of N. Am., ___ F.3d ___, 2012 WL 1868782, at *4 (8th Cir. 2012). The loadstar amount "*roughly* approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." Perdue v. Kenny A. ex rel. Winn, ___ U.S. ___, 130 S. Ct. 1662, 1672 (2010).

Beal Bank seeks a total of $132,143.17 in attorneys' fees, costs, and expenses. For the legal services rendered by the Stinson Morrison Hecker firm through February 21, 2012, it seeks $72,102.52. For the legal services rendered by the McKenna, Long & Aldridge firm through August 26, 2011, it seeks $60,040.65.

BBSL objects that these fees are grossly excessive, because (a) no discovery requests were ever made and responded to by the parties, (b) the only motions have been to dismiss and for summary judgment, and (c) the fees of two law firms have been submitted, one of which, the McKenna, Long & Aldridge firm, has never entered its appearance in the case, had never been previously disclosed to the court, and was not involved in the operative facts of this case.

The court agrees that the current record does not support recovery for the services of the McKenna, Long & Aldridge firm. First, in support of those services, Beal Bank has submitted basic fee bills from which much information has been redacted, to the extent that the court is

unable to discern for many entries the subject matter of the services rendered. See Quigley v. Winter, 598 F.3d 938, 956 (8th Cir. 2010) ("Where the documentation of hours is inadequate, the district court may reduce the award accordingly." (citation omitted)); e.g., Bores v. Domino's Pizza LLC, Civ. No. 05-2498 (RHK/JSM), 2008 WL 4755834, at *6 (D. Minn. Oct. 27, 2008) (attorney's billing statements lacked sufficient detail for the court to ascertain whether the time expended was reasonably necessary, redundant, or excessive).

Among the factors assigned to the court for determining reasonable attorneys fees is whether duplicative or unnecessary legal service was rendered. The use of a second law firm relates to this issue. While litigation involving FIRREA may require a measure of expertise, the record contains no statement by the Stinson Morrison Hecker firm that it was not capable of this research and service, nor does the record contain any documentation regarding Beal Bank's contractual engagement of the McKenna firm in this matter. That the McKenna firm did not enter its appearance in this litigation to represent Beal Bank further clouds its involvement. The justification for the use of the McKenna firm in this action and why its services were not duplicative has not been provided to the court. See generally, Hensley v. Eckerhart, 461 U.S. 424, 437 (1983) (explaining that the party seeking attorneys' fees bears the burden of establishing its entitlement to a fee award).

Because further litigation is necessary to decide what amount of money, if any, Beal Bank is entitled to under the Champion Bank participation, a final determination of a reasonable attorneys fee for plaintiff as the prevailing party is premature.

For the reasons set forth above and to the extent set forth above,

**IT IS HEREBY ORDERED** that the motion of plaintiff Beal Bank USA for summary judgment (Doc. 29) is sustained in part and otherwise denied.

**IT IS FURTHER ORDERED** that a non-jury trial of this action is set for Wednesday, September 12, 2012, at 9:00 a.m.

            /S/  David D. Noce
           **UNITED STATES MAGISTRATE JUDGE**

Signed on June 13, 2012.